**Claire Joe CARDWELL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

April 2, 1982.

Discretionary Review Denied Oct. 5, 1982.

Jack Emory Farley, Public Advocate, Frankfort, Nan Shelby Calloway, Bowling Green, for appellant.

Steven L. Beshear, Atty. Gen., Virgil W. Webb III, Asst. Atty. Gen., Frankfort, for appellee.

Before GANT, McDONALD and VANCE, JJ.

McDONALD, Judge:

The appellant alleges an illegal warrantless search by the police.

The facts of this case are remarkable in that one would believe that the fickle finger of fate inevitably does point to some persons. In this instance it was the appellant, Claire Joe Cardwell.

Claire Joe Cardwell burglarized the home of Parker Miller in rural Warren County. After ransacking the residence, he absconded with some guns and knives belonging to Parker Miller's son, Maurice. Claire Joe put the stolen items in the trunk of his car and proceeded toward Bowling Green. Upon entering Highway 31–W from Route 743, he collided with a motorist named Edwin James. Claire Joe fled the scene as a "hit and run" driver, and Mr. James gave chase until Claire Joe lost control of his car and turned it over a couple of times. The police and an ambulance were summoned.

Trooper Anthony Clemons arrived on the scene after being dispatched by radio. It was readily apparent that Claire Joe was injured and he was taken from the car by stretcher.

Mr. James identified Claire Joe to Trooper Clemons as the one who previously collided with him and whom he had chased.

Claire Joe's vehicle was sitting upright alongside Highway 31–W near a curve in the road, and it could be seen in one direction for less than 100 feet. There was extensive damage to the vehicle. In the process of the wreck it had knocked down about 40 feet of fence row. The trooper said the rear corner of the vehicle protruded over the edge of the shoulder of the road.

Before being taken from the scene to the hospital, Claire Joe told the trooper that his father would get the car with a wrecker from Louisville. But because a wrecker from Louisville would take several hours and the trooper felt the vehicle constituted a hazard and could cause other accidents, the trooper called for a local wrecker to have it removed. By the time the wrecker arrived, Claire Joe was gone from the scene. Trooper Clemons testified as follows:

Question: So, when Mr. Cardwell had been taken off in the ambulance to the hospital, then, what occurred?

Answer: Well, just shortly after the ambulance was called, a wrecker was called. The wrecker was at the scene—I was involved in point-control, on flagging traffic around the wreck, getting the ambulance in position, or— excuse me, getting the wrecker in position to tow the vehicle. And, when the wrecker hooked onto the vehicle—I had noticed previously, when I was at the back of the car that the lock was gone out of the trunk—there was a hole where the lock should have been, but there was no lock in the trunk. And, so I returned to the trunk to see if there was any valuables in the trunk, because the car was going to be towed in.

Question: Okay, and what did you find when you returned to the back of that trunk—to the back of that car?

Answer: Well, when I went to the trunk of the car, the trunk lid was—the trunk lid was down but it was not latched and, of course, was not locked because there was no lock in it. And, when I raised the trunk, there was two shotguns and one rifle in the trunk of the car.

One of the guns had marked on it the name "Maurice B. Miller" and a date. The trooper was informed at the scene that a person named Miller lived on Route 743. He began his investigation and drove from the scene to Route 743 to check out the residences in the area. The first house in the direction from which Claire Joe had come was the residence of Parker Miller, Sr. Going to the rear of the home the trooper found evidence of a break-in. He entered the home and discovered the house had been ransacked. While the trooper was there, Mr. Miller returned home from work and identified the guns. Trooper Clemons went back to the scene of the accident with Detective Pitcock and they searched for other evidence. One of Miller's knives was found, and another could be seen in the car, in plain view, at the wrecker's lot. Claire Joe was arrested at the hospital and later confessed to the crimes after being advised of his rights.

The trial court refused to suppress the evidence and the confession. Claire Joe was found guilty by the jury and sentenced to 15 years in the penitentiary for burglary

in the first degree, and theft by unlawful taking of property over $100. He contends that the search of the vehicle's trunk was unreasonable, in violation of appellant's rights under the Fourth Amendment of the U. S. Constitution, and not justified as an inventory search.

### The Impoundment

■ Appellant relies on *Wagner v. Commonwealth,* Ky., 581 S.W.2d 352 (1979). The Supreme Court of Kentucky, in *Wagner,* said that:

A vehicle may be *impounded* without a warrant in only four situations:

1) The owner or permissive user consents to the impoundment;

2) the vehicle, if not removed, constitutes a danger to other persons or property or the public safety and the owner or permissive user cannot reasonably arrange for alternate means of removal;

3) the police have probable cause to believe both that the vehicle constitutes an instrumentality or fruit of a crime, and that absent immediate impoundment the vehicle will be removed by a third party; or

4) the police have probable cause to believe both that the vehicle contains evidence of a crime and that absent immediate impoundment the evidence will be lost or destroyed. (Emphasis ours.)

*Id.* at 356.

The first question is whether or not the impoundment of the vehicle was within one of the four *Wagner* situations. Claire Joe requested that his vehicle be left where it was so his father could come from Louisville with a wrecker to get it. But the trooper sent for a local wrecker, and considering the circumstances confronting the trooper, we believe his judgment was reasonable. The wrecked vehicle was a safety hazard and had to be removed from the scene as soon as possible because of its damaged condition, its close proximity to the roadway, and its location on a curve with short visibility. A vehicle in these circumstances causes other motorists to be distracted, to look and gawk out of concerns for rendering aid or curiosity. It impedes traffic flow and constitutes a hazard upon the highway. Appellant vigorously argues that under situation No. 2 the owner (here the appellant) was making reasonable arrangements for an alternative means of removal of the vehicle; however, it is admitted this arrangement whereby his father would come from Louisville would create several hours delay while the vehicle was abandoned and exposed to the public on the roadway. This alternate means of removal of the vehicle was not acceptable to Trooper Clemons. We believe he was correct in rejecting it and that he acted properly by ordering the impoundment and removal by a local wrecker, thus satisfying situation No. 2 in *Wagner.*

### The Search

*Gallman v. Commonwealth,* Ky., 578 S.W.2d 47 (1979) tells us that all searches without a valid search warrant are unreasonable unless shown to be within one of the exceptions to the rule.

■ With the vehicle impounded and in a position to be removed from the scene, the trooper innocently discovered the fruits of the appellant's crimes. Seeing the unlocked and loose trunk lid, the trooper raised it to see if there was anything in the trunk that should be protected or secured. Counsel for the appellant admitted at oral argument that the peace officer "stumbled" into his discovery. He did not possess a "police mentality" when he lifted the lid, suspecting a body or dope in every trunk and a gun under every seat. In fact, we question seriously whether it was a search. We have adopted the following as a definition of a search.

The term 'search,' as applied to searches and seizures, is an examination of a man's house or other buildings or premises, or of his person, with a view to the discovery of contraband or illicit or stolen property, or some evidence of guilt to be used in the prosecution of a criminal action for some crime or offense with which he is charged. As used in this connection the term implies some exploratory inves-

tigation, or an invasion and quest, a looking for or seeking out. The quest may be secret, intrusive, or accomplished by force, and it has been held that a search implies some sort of force, either actual or constructive, much or little. A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a 'search.'

*Nichols v. Commonwealth,* Ky., 408 S.W.2d 189 (1966). Finding the trunk lid loose, without a lock, the trooper did what we would expect a peace officer to do under like circumstances: to protect property as well as citizens. Keep in mind, the appellant was not present. He was on his way to the hospital by ambulance. Therefore, we believe the circumstances of this case involve one of the exceptions mentioned in *Wagner, supra,* which is commented upon on page 357 of that opinion where it is stated:

A determination of the circumstances which would justify an inventory of a *lawfully impounded vehicle whose owner* or permissive user *is not present* or whose owner or permissive user may not be reasonably contacted at the time the impoundment is a matter which we reserve until we are presented with a case which squarely presents the issue. (Emphasis ours.)

This is such a case. Therefore, the question is: Did Trooper Clemons have the legal right to lift up the lockless trunk lid of the appellant's car? We believe that he did by implied consent of the appellant. Implied consent comes inferentially from the conduct of the parties and by a logical deduction of the circumstances. If the conduct and circumstances so justify, consent may be presumed. Here, the trooper was not searching for anything. He was not trespassing or illegally invading another's privacy. He was acting in good faith in an effort to "safe keep" appellant's personal property.

From another perspective, we ordinarily assume people obey the law. *Thoni Oil Magic Benzol Gas Stations, Inc. v. Johnson,* Ky., 488 S.W.2d 355 (1972). An ordinary reasonable person under the same circumstances would consent to the trooper securing his trunk, as was done in this case.

We agree with the trial court's sound analysis that the trooper was "exercising a sound and reasonable discretion" in his actions. We are saying that there are situations where there is implied consent, and we believe this case to be one. *See,* W. Ringel, *Searches and Seizures, Arrests and Confessions* § 231 (1972).

The strict doctrine enunciated in *Wagner, supra,* must be applied to circumstances consistent with the factual circumstances in the *Wagner* case. In *Wagner,* there were a number of police confronting the defendant in the presence of the victim, and the vehicle was virtually within arm's reach. But it must further be kept in mind that the *Wagner* court characterized the situation as, "In a swearing match such as this ...." In addition, the police in that case arrested Wagner and later conducted an "inventory" search of his car for the purpose of "looking for evidence." Compare those circumstances with the case at hand where the lone trooper, acting in good faith, admittedly stumbles onto the fruits of a crime without having any idea that such a crime had taken place. We hold, as did the trial court, that there was no unreasonable search.

Counsel's other points of error concerning the knife found at the scene and the signed confession were not preserved for appellate review.

The conviction of the appellant and the judgment in the Warren Circuit Court are affirmed.

All concur.